2005 VT 12

**STATE of Vermont v. James HEMOND**

[868 A.2d 734]

No. 03-329

¶ 1. February 2, 2005. Defendant appeals a district court judgment convicting him, after a jury trial, of operating a motor vehicle in a grossly negligent manner with serious injury resulting, in violation of 23 V.S.A. § 1091(b). Defendant presses three arguments on appeal: (1) the trial court's exclusion of his exculpatory written statement to the police on the day of the incident violated his right to present evidence and the rule of completeness; (2) the prosecutor's statement during closing arguments that the outcome of the case would have no bearing on complainant's pending civil case against defendant was prejudicial; and (3) the prosecutor's expressions of personal opinion in his closing were plain error. None of defendant's arguments warrants reversal. First, the court acted within its discretion by excluding the written statement because no part of the statement was introduced, so that the rule of completeness did not apply. Second, the prosecutor's remarks concerning the impact this case would have on the civil case were not so prejudicial as to warrant reversal, considering defendant already planted the seed in the jury's mind of complainant's potential motive to

lie. Finally, the prosecutor's use of expressions like "I think" during his closing did not amount to plain error. Therefore, we affirm.

¶ 2. Defendant was charged with grossly negligent operation of a motor vehicle, in violation of 23 V.S.A. § 1091(b), for "blocking a motorcycle from passing and braking abruptly, thereby causing an accident in which [complainant] suffered serious bodily injury." At trial, complainant testified that he was driving his motorcycle southbound on Route 7 in Georgia, Vermont, at approximately fifty to fifty-five miles per hour, when he came up behind the car driven by defendant. According to complainant, defendant's car was moving below the speed limit, at about forty miles per hour. Complainant signaled to pass and pulled into the left lane. Defendant's car then pulled into the left lane, preventing complainant from passing. Both vehicles then returned to the right lane.

¶ 3. Complainant again signaled to pass and, as he moved into the left lane, defendant's car "jerked into the left hand lane." Complainant testified he immediately pulled back into the right lane, as did defendant's car. At this point, complainant estimated that both vehicles were traveling at about thirty-five miles per hour. As the vehicles approached the intersection with Interstate 89, where a concrete barrier divides the road, the car "slammed on his brakes" and slowed down. Complainant applied his brakes but could not stop in time, and the motorcycle's front tire hit the car's rear bumper. Complainant flew through the motorcycle's windshield, and his left shoulder hit the rear tailgate of the car. Defendant stopped and called 911.

¶ 4. Franklin County Deputy Sheriff Jacy Dennett responded to the scene and spoke with defendant. At trial, Deputy Dennett testified that defendant explained he had pulled over to the left and slowed down "to prevent [complainant] from passing" and "to block him." The prosecutor asked the deputy if defendant had said why he was preventing the vehicle from passing, and the deputy replied, "[h]e didn't want the vehicle to pass him before the median."

¶ 5. Next to testify was Deputy Sheriff Allison Geary who also was present at the scene of the accident. She testified that defendant told her he had pulled over to stop the motorcycle from passing him because he was going to be turning onto I-89. "He had simply stated that he had pulled over so the motorcycle would not pass him."

¶ 6. On cross-examination of Deputy Geary, defense counsel offered a written statement defendant had provided to Deputy Geary after the accident. In the statement, defendant wrote that he was worried about the complainant's vehicle passing and "getting in connection with island." The written statement does not say that defendant tried to block the motorcycle. The State objected to the written statement as hearsay, and the district court sustained the objection.

¶ 7. We turn first to defendant's contention that the exclusion of his written statement was reversible error because it violated the rule of completeness and his right to present evidence. "We will reverse a trial court's decision to admit evidence only if the court withheld or abused its discretion." *State v. Gemler*, 2004 VT 3, ¶ 11, 176 Vt. 257, 844 A.2d 757. In sum, defendant argues that the trial court abused its discretion because, once the court allowed the State to introduce defendant's oral statements to the police, the rule of completeness required admission of his written statement. We disagree.

¶ 8. The rule of completeness has been codified in Vermont Rule of Evidence 106: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part

or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." The plain language of the rule supports the trial court's decision to exclude the written statement. Because the State did not offer any part of a written statement, defendant could not properly invoke the rule to introduce the statement as an "other part" or "other writing" related to a writing or recorded statement introduced by the State. In other words, because the State limited its proof to testimony concerning defendant's oral statements to the police officers, the defendant could not use the separate written statement to complete that testimony under V.R.E. 106. See, e.g., *United States v. Ramirez-Perez*, 166 F.3d 1106, 1113-14 (11th Cir. 1999) (holding that defendant was not entitled to introduce exculpatory, contemporaneous written statement where prosecutor limited agent's testimony to defendant's inculpatory oral statements). In short, nothing in V.R.E. 106 or our caselaw suggests that the rule of completeness requires admission of a *written* statement based on its relationship to an *oral* statement that has been admitted into evidence. Therefore, the district court properly exercised its discretion when it excluded the written statement.

¶ 9. Moreover, the exclusion of the statement did not detract from defendant's ability to present his theory of the case. In fact, defense counsel elicited the substance of the written statement from Deputies Dennett and Geary during their cross-examinations. Specifically, Deputy Dennett testified that defendant said he pulled to the left but did not cross the center lines, slowed down, and put on his blinker, and that he was "worried" that the vehicle approaching him quickly from the rear was going to hit the concrete barrier near the exit. Deputy Geary also testified that defendant said he was "worried about the vehicle passing him."

Additionally, defendant testified that he never told the officers he blocked the motorcycle, and that the oral and written versions of the incident he gave on the day of the accident were consistent with the version he testified to at trial. Because the deputies' and defendant's testimony covered the substance of the written statement and enabled defendant to articulate his theory of the case, no prejudice affecting a substantial right of defendant resulted from the · district court's exclusion of the written statement.* See V.R.C.P. 61 (providing that error in the exclusion of evidence does not warrant relief unless refusing to grant relief "appears to the court inconsistent with substantial justice," and directing court to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"). Accordingly, we affirm the district court's exclusion of the written statement.

¶ 10. Next, we reject defendant's argument that the trial court erred in denying defendant's motion for a new trial based on the prosecutor's statement during closing arguments concerning the impact of the jury's verdict on the civil case between complainant and defendant. The allegedly improper statement occurred during the State's rebuttal closing, after defense counsel suggested in his closing argument that the jury should not believe complainant because he had commenced a civil case against defendant: "What does [complainant] have to gain by testifying that this is the way that it happened? There is a civil suit." On rebuttal, the prosecutor responded as follows: "[Defense counsel] has raised the

---

\* For these reasons, we also reject defendant's argument that the exclusion of the written statement violated his right to present evidence in his defense.

issue that there's a civil case. You folks know that you're not determining money damages here. Any decision that you make in the case is not going to affect the civil case. So any contention that [complainant's] testimony is colored by that ....." Defense counsel interrupted with an objection that the prosecutor's remark was inaccurate. The trial court responded that "[t]he jury will make its own judgment," and the prosecutor continued without further comment on the topic.

¶ 11. A defendant seeking reversal of a conviction based on an allegedly improper closing argument must show not only that the prosecutor's argument was improper, "'but also that it impaired the defendant's right to a fair trial.'" *State v. Hemingway*, 148 Vt. 90, 91, 528 A.2d 746, 748 (1987) (quoting *State v. Gates*, 141 Vt. 562, 566-67, 451 A.2d 1084, 1086 (1982)). Assuming arguendo that the prosecutor's remark was an incorrect statement of the law concerning the impact of a criminal verdict on a civil case, we nonetheless hold that defendant did not show that the remark impaired his right to a fair trial.

¶ 12. In assessing whether a prosecutor's statement requires reversal, we have considered several nonexclusive factors: the blatancy of the challenged statement, the impact on the theory of the defense, the persistence and frequency of the statement, the opportunity for the court to minimize potential prejudice, the strength of the evidence supporting the relevance of the statement, the overall strength of the State's case, the apparent motivation for making the remarks, *State v. Francis*, 151 Vt. 296, 299, 561 A.2d 392, 394 (1989), and whether the statement was inflammatory and attacked defendant's character, *State v. Martel*, 164 Vt. 501, 506, 670 A.2d 845, 849 (1995). Here, these factors weigh heavily against finding that the statement impaired defendant's right to a fair trial.

¶ 13. The prosecutor's statement pertained not to defendant's theory of the case, but to rebutting a charge of witness bias. Similarly, it was not an inflammatory attack on defendant's character. Moreover, given that the prosecutor made only one statement and immediately moved on after defendant's objection, the statement was neither blatant nor persistent. In addition, because defense counsel first broached the issue of the complainant's potential bias, we cannot say the prosecutor was motivated by an improper purpose in attempting to address the issue. Finally, the district court reacted immediately by emphasizing that the jury "will make its own judgment," and the court's instructions reinforced that the lawyers' arguments are not evidence and that the jurors are the sole judges of the facts, including the credibility of the witnesses. Therefore, we reject defendant's argument that the prosecutor's statement concerning the civil case warranted a new trial. See *id.* at 506-07, 670 A.2d at 849 (affirming denial of motion for new trial where alleged improper statement occurred once, comment was not inflammatory and did not attack defendant's character, and court instructed jury that counsel's arguments were not evidence).

¶ 14. Finally, we reject defendant's argument that the prosecutor's alleged statements of personal opinion during the closing argument amounted to plain error requiring reversal. We review for plain error where, as here, defendant did not object at trial to an allegedly improper statement by a prosecutor in the State's closing argument. *State v. Ayers*, 148 Vt. 421, 425, 535 A.2d 330, 333 (1987) (citing V.R.Cr.P. 52(b)). This standard requires a showing of an error that "strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." *Id.* at 426, 535 A.2d at 333. In the context of a challenge to a prosecutor's closing argument, we have

found plain error "only if the argument is manifestly and egregiously improper." *Id.* (quotation omitted).

¶ 15. We cannot agree with defendant that the challenged statements amount to plain error. The contested remarks in this case are similar to those in *State v. Messier*, 146 Vt. 145, 499 A.2d 32 (1985), where we declined to find plain error. In *Messier*, the remarks "contained such expressions as 'I think . . . ;' 'I don't think . . . ,' and the like," and we noted that the defendant "produce[d] six examples" of such statements. 146 Vt. at 159, 499 A.2d at 43. Recognizing that the remarks reflected "what [the prosecutor] thought the jury would believe," that "virtually all" of the statements were "clearly rhetorical," that "they were short and widely scattered throughout" the closing argument, and that the trial court instructed the jury that counsel's arguments are not evidence, we declined to find plain error. *Id.* at 160, 499 A.2d at 43. Similarly, the comments here did not blanket the record but appeared sporadically at roughly six locations identified by defendant. In addition, they expressed what the prosecutor thought the jury would believe, and did not urge upon the jury the prosecutor's own view as to the guilt of the defendant. Moreover, the district court instructed the jury that counsel's arguments were not evidence, and that the jury was required to base its decision only upon the evidence.

¶ 16. This case contrasts sharply with the rare instances in which we have found plain error based on a prosecutor's comments. For instance, in *Ayers*, we found plain error because the prosecutor opined that he believed the witness and not the defendant, and the case revolved entirely around the credibility of the witnesses. 148 Vt. at 426, 535 A.2d at 333. Significantly, we also pointed out that the defendant in *Ayers* appeared without counsel. *Id.* at 426, 535 A.2d at 334. This case also differs markedly from *State v.*

*Lawton*, where the prosecutor repeatedly "interject[ed] her personal opinion of defendant's character and credibility" during cross-examination, including comments like defendant "'had a lot of practice lying.'" 164 Vt. 179, 184, 667 A.2d 50, 55 (1995). Here, the prosecutor never attacked defendant, but restricted his comments to the evidence and the testimony. Therefore, we find no plain error based on the contested remarks.

*Affirmed.*